### SENTER & CO. ET AL. v. WILLIS WHITAKER ET AL.

(Case No. 1899.)

1. RIGHT OF ACTION— PRACTICE—RECONVENTION—LIMITATION—Plaintiffs, commission merchants, agreed with R., who was a member of the defendant firm, to sell his cotton, and, with his consent, to apply the proceeds thereof to payment of defendants' firm notes in the hands of plaintiffs. In an action upon the notes, defendants pleaded in reconvention the damage resulting from an alleged neglect of duty by plaintiffs in selling R.'s cotton. *Held*, If plaintiffs violated any duty, defendants as a firm neither owning nor having any interest in the cotton sold, could not complain. They could not set up a cause of action which did not enure to them.

2. The claim in reconvention was barred if two years had elapsed between its accrual and the filing of the plea. (Following Fowler v. Stoneum, 11 Tex., 478.)

APPEAL from Bowie.    Tried below before the Hon. W. P. McLean. The facts are stated in the opinion.

*F. M. Henry,* for appellants, cited:   R. S., Arts. 646, 649, 650, 1266, 3203, 3204;  Winder *v.* Caldwell, 14 How., 434;  Field *v.* Farrington, 10 Wall., 141 Henderson *v.* Gilliam, 12 Tex., 71;  Allbright *v.* Aldrich, 2 Tex., 166;  Halliman *v.* Rogers, 6 Tex., 91;  Cook *v.* McGreal, 3 Tex., 487;  R. S., Art. 1448.

*Todd & Hudgins,* for appellees, cited:   Hall *v.* Hodge, 2 Tex., 323; Thomas *v.* Hill, 3 Tex., 270;  Tinsley *v.* Ryan, 9 Tex., 405;  Baker *v.* Smith, 8 Tex., 346;  Taylor *v.* Coleman, 20 Tex., 772;  Castro *v.* Gentiley, 11 Tex., 28;  Atkins *v.* Ware, 35 Tex., 577;  Nichols *v.* Jones, 36 Tex., 448.

STAYTON, ASSOCIATE JUSTICE.—This action was brought to recover the balance due on two notes, executed to Senter & Co. by Willis Whitaker, J. T. Rosborough and A. R. Movers, and to foreclose a deed of trust on land executed by them to secure the notes.   The defendants alleged in their answer that they composed the firm of Whitaker & Co. at the time the notes were executed, and that they and another note were given for an indebtedness of that firm to the plaintiffs; and that in addition to this, they were indebted at a subsequent time to the plaintiffs in the further sum of $1,186.19 for goods purchased, making an entire indebtedness of $4,486.19.

They further alleged, the indebtedness thus standing, that on September 28, 1878, it was agreed between the plaintiffs and the defendants, the latter acting through Rosborough in their behalf, that the indebtedness should be paid off by the proceeds of cotton which Rosborough was to ship to the plaintiffs for sale, the same being the property of Rosborough.  The answer further alleges that during the years 1878 and 1879, shipments of cotton were made in pursuance of that agreement, out of the proceeds of which the plaintiffs appropriated on the indebtedness the sum of $2,293.82, and that out of the proceeds of cotton so shipped during the years 1880 and 1881, they appropriated the further sum of $790.81.

They further alleged, that, in pursuance of the same agreement, Rosborough afterwards shipped to the plaintiffs one hundred and four bales of cotton, which, at the time it was received by the plaintiffs at St. Louis, which was the plaintiffs' place of business, could have been sold for twelve or thirteen cents per pound, had the plaintiffs offered

it for sale. The weight of this cotton is alleged, and that it would have sold for $6,552 in the St. Louis market if it had been offered for sale by the plaintiffs within a reasonable time after they received it.

It is alleged, however, that the plaintiffs, without instructions so to do, held the cotton on a falling market, until it greatly depreciated in value, whereby the defendants claimed that they were damaged in the sum of $2,184, which they plead in reconvention to the claim sued on.

The answer admits that, of the proceeds of the cotton last named, the defendants received $4,368, through drafts drawn by them on the plaintiffs; and by trial amendment they allege that these drafts were drawn by Rosborough, whereby the plaintiffs paid him individually that sum. Of this they do not complain, but urge that they should have been credited, as of date April 23, 1880, with the sum which they claim results to them as damages on account of the failure of the plaintiffs to sell the cotton within a reasonable time after it arrived at St. Louis. The answer further alleges that the plaintiffs were cotton factors and commission merchants, doing business in the city of St. Louis, and that in that capacity they were acting in the management of the cotton shipped through the agreement between them and Rosborough. The original answer was filed on March 2, 1883, but we have no means of ascertaining its contents.

The amended answer, on which the case was tried, was filed September 28, 1883. From this statement of the case, it will be seen that the defendants rely upon a claim for damages, arising from an alleged neglect of the plaintiffs to sell the one hundred and four bales of cotton within a reasonable time after its arrival in St. Louis, to defeat a recovery on the notes sued upon. To this claim the statutes of limitation of two years was pleaded. There was a trial, and verdict and judgment for the defendants.

There is nothing in the evidence to show that Rosborough made any agreement whatever that he would ship cotton to the plaintiffs for sale, and that out of the proceeds they should have the right to appropriate such sums as were necessary to pay the notes which they held. That Rosborough shipped the cotton to the plaintiffs is not denied, and the agreement made in reference to the appropriation of the proceeds to the payment of the indebtedness due from Whitaker & Co., is thus stated by Rosborough himself: That "he made an agreement with S. J. Johnson, agent for Senter & Co., that he, Rosborough, would ship his cotton to plaintiffs, as commission merchants, and would take up the notes sued on, by balance remaining to his credit after using what he needed in his business, of the proceeds of the sales of the cotton; that he was running a farm at that time and had to use

the most of his means, but agreed to apply as much as he could spare out of the proceeds of the sales of his cotton."

There is no other evidence, in the record, tending to show any agreement whatever in reference to the disposition of the proceeds of Rosborough's cotton, other than such as shows that the ordinary rights arising between principal and agent existed between the plaintiffs and him. This was nothing more than an ordinary promise by one of several joint and several debtors, to pay out of his own means, as fast as he could, a debt for which others were equally liable. There was nothing in this to raise a contract between the firm of which Rosborough was a member and the plaintiffs, even for the breach of which a cause of action would arise in favor of Whitaker & Co.

If Rosborough forwarded the cotton and did not need the proceeds for some other purpose, the plaintiffs could have appropriated it by the consent of Rosborough thus given; but it was for the latter to determine whether he needed all, a part or the whole of the proceeds for some other purposes. If the proceeds of the one hundred and four bales of cotton were paid out upon drafts drawn by Whitaker & Co., they cannot complain that it was not appropriated to the satisfaction of their indebtedness, and if it was drawn out upon drafts drawn by Rosborough, under his own statement it appears that he had a perfect right so to use it, for it was his own and his co-partners so far as the record shows, had no legal right to object to his so doing.

If the plaintiffs violated their duty to any one by not selling Rosborough's cotton promptly, they certainly violated no duty to Whitaker & Co., who were neither the owners nor persons having any interest or right in it whatever. If plaintiffs violated no duty to them they have no cause of action, and a cause of action which did not inure to them cannot be set up as a defense to the action of the plaintiffs on a cause of action against them. The cotton belonged to Rosborough; the relation of principal and agent existed between him and the plaintiffs, and for a violation of duty by the latter in respect to the subject matter of the agency, he alone would have cause of action. The plaintiffs asked an instruction to the effect that if Rosborough shipped to the plaintiffs for and on his own individual account, and not for and on account of Whitaker & Co., the one hundred and four bales of cotton, that then no damage or loss on the same could be urged as a defense against the notes sued upon. This the court refused to give, and we are of the opinion, under the uncontroverted facts of the case, that such a charge should have been given.

The same charge embraced the further proposition, that the defendants could not avail themselves of any defense which they might have

had, growing out of the failure of the plaintiffs to put the cotton on the market within a reasonable time after its arrival, if the loss which thereby resulted occurred more than two years before the institution of this suit. Had the cotton been the property of Whitaker & Co., and shipped under such an agreement as is set up in defendants' answer, such a charge would have been proper. The matter which the defendants set up is not one in offset, but one in reconvention, which, unless prosecuted within two years from the accrual of action would be barred. Fowler v. Stoneum, 11 Tex., 512.

More than two years elapsed after the matters accrued, which they urged as a defense, before the answer setting them up was filed, and could the defendants have availed themselves of such a defense at any time, it was barred when they pleaded it. An inspection of the statement of facts shows that every cent of the proceeds of cotton shipped to the plaintiffs by Rosborough has been paid to him or entered as a credit, under his consent, upon the indebtedness of the defendants. It shows further, that Rosborough expressly directed the plaintiffs to hold his cotton for a better market if, in their judgment, it was thought prudent to do so, and that in the exercise of their best judgment they held it longer than they would have done but for such instructions.

The judgment of the court below will be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered October 26, 1886.]